(No. 63812 

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. MARY O. CISEWSKI, Appellant.

*Opinion filed October 5, 1987.*

CUNNINGHAM, J., took no part.

James J. Doherty, Public Defender, of Chicago (Georgeen M. Carson, Assistant Public Defender, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., Kenneth T. McCurry, and Maureen O'Brien, Assistant State's Attorneys, of

counsel), for the People.

CHIEF JUSTICE CLARK delivered the opinion of the court:

The defendant, Mary Cisewski, was convicted by a jury in the circuit court of Cook County of the voluntary manslaughter of her husband, Donald Cisewski (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b)). She was sentenced to five years' imprisonment. The appellate court, with one judge dissenting, affirmed the conviction (144 Ill. App. 3d 597), and we granted the defendant's petition for leave to appeal. (103 Ill. 2d R. 315.)

The issues presented in this appeal are: (1) whether the State's failure to comply with Supreme Court Rule 412(a)(ii) (107 Ill. 2d R. 412(a)(ii)) entitles defendant to a new trial; and (2) whether the prosecutor's statements during rebuttal closing argument deprived the defendant of a fair trial under the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2). We affirm the defendant's conviction and sentence.

The record in this case reveals that the defendant had suffered for a number of years from paranoid fears. She falsely believed that she was being harassed by police, tenants, lawyers, and others who she believed were part of a conspiracy against her. In 1979 or 1980, in response to her fears, she purchased a .32-caliber revolver to protect herself.

In late 1980, the defendant met Donald Cisewski and the two were married in November of 1981. The record reveals that Donald was aware of the defendant's "harassment" beliefs at the time of their marriage. Sometime shortly after they were married, the defendant began to suspect that Donald was part of the conspiracy against her. She believed that there was a plot to have

her killed and that Donald was "being pushed to carry it out."

On February 9, 1982, the defendant came home from work and discovered that her gun was missing from the location where she kept it. Donald claimed that he did not know where the gun was, but the next evening he inexplicably produced the box of bullets to the gun. The defendant became frightened, believing that if he had taken the bullets he also must have taken the gun. She immediately searched his car and found the loaded gun in the glove compartment. The defendant brought the gun into the house and hid it in a drawer in the dining room. The defendant testified that Donald never admitted that he took the gun and she did not tell him that she had found it in his car.

Over the next few days, the defendant's fear that Donald planned to kill her intensified. She talked to her children and made arrangements to move in with one of them within the next few weeks. The couple's arguing continued. According to the defendant, Donald told her that no matter what he did to her the police would arrange to have her death reported as a suicide.

On Friday, February 12, the defendant came home from work and made several telephone calls to her children. She drank a few beers in an effort to calm her heightened feelings of desperation. When Donald came home from work that evening, he and the defendant began to argue in the kitchen. While they were arguing, Donald got up and went into the living room and sat down. The defendant then took the loaded gun from the drawer in the dining room and went into the living room with the gun in her hand. She showed Donald the gun and asked him if he thought it was funny. She said to him, "Your problem is you think everything is funny." The defendant then shot her husband in the head and abdomen.

The defendant testified in her own behalf at trial. She stated that she had no intention of firing the gun, but only wanted to scare Donald. The defendant testified that she had no memory of firing the shots. She said that she fainted and when she regained consciousness she realized the gun had been fired. The defendant then walked into the kitchen, put the gun down and called the police.

The police officer who responded to the call testified that when he arrived at the Cisewski home, the defendant told him that, following an argument, she shot her husband twice. Another investigating officer, who later interviewed the defendant at the police station, testified that the defendant told him that when she pointed the gun at Donald, he said something to the effect of "No, Mary, no." The defendant told the officer that she shot Donald once, but could not recall having fired the second shot. However, she subsequently told an assistant State's Attorney, in the officer's presence, that she shot her husband twice.

A ballistics expert testified on behalf of the State that the "trigger pull" on the defendant's gun was "heavy." This testimony was put forth by the State to obviate any suggestion advanced by the defendant that the gun went off accidentally.

Dr. Albert Stipes, a psychiatrist called by the defense, testified that upon examining the defendant, he found that she suffered from paranoia and had delusions that there was a conspiracy against her. Dr. Stipes found that the defendant was suspicious of everyone, had felt threatened particularly by her husband, and believed that he was going to kill her. According to Dr. Stipes the defendant did not, however, believe that her husband was attacking her at the time she shot him. Dr. Stipes found the defendant sane and fit to stand trial.

During the trial, the State introduced evidence that sometime after the shooting the defendant had telephoned her husband's employer, Teledyne Corp., to inquire about his paycheck and life insurance proceeds. The record indicates that the State first inquired of this phone call during its cross-examination of the defendant. The defendant objected to this line of questioning on the grounds that the State had not given any information to the defendant prior to trial regarding the substance of any statements allegedly made by the defendant to Teledyne, and that the defendant had no knowledge of any rebuttal witnesses. At a sidebar conference, the State responded that it had, in fact, disclosed, prior to the commencement of trial, the name of Teledyne employee Patricia Stanford as a rebuttal witness on its supplemental answer to discovery. Defense counsel then stated, "[I]f the State will tell us what the conversation [was], we have no problem." In response, the State told defense counsel that the defendant had called Patricia Stanford at Teledyne Corp. asking for the $27,000 insurance money she believed she was owed as the named beneficiary on Donald's policy. Defense counsel then moved for a mistrial on the basis of a discovery violation, which, along with defendant's earlier objection, was denied. The State's cross-examination of the defendant ceased and the trial continued.

On the next day of trial, during the State's presentation of rebuttal evidence, the trial court permitted the State to introduce the testimony of Patricia Stanford. The State indicated that the witness was being called to impeach the defendant's earlier testimony denying that she had called Teledyne after the incident to inquire about her husband's insurance proceeds. Defendant's objection to Patricia Stanford's testimony was again overruled. Ms. Stanford testified that, following Donald's death, a person identifying herself as Mary Cisewski

called Teledyne twice and asked about Donald's paycheck and life insurance proceeds. Following this testimony, the defendant was allowed to cross-examine Ms. Stanford, as well as present surrebuttal evidence, which together showed that the defendant was incarcerated at the time of the telephone call, that she could only make collect telephone calls, and that Teledyne Corp. did not accept collect calls.

It was the defendant's defense at trial that she shot her husband in self-defense and out of paranoia. She also maintained, as stated previously, that she did not intend to shoot her husband, and that she could not recall having fired the gun. Instructions on murder, voluntary manslaughter and involuntary manslaughter were tendered to the jury, and, as stated earlier, the jury returned a guilty verdict on the voluntary manslaughter charge.

The first issue presented in this appeal is whether the State's failure to disclose prior to trial the substance of the defendant's alleged telephone conversation with Patricia Stanford regarding Donald's life insurance proceeds constituted reversible error. A divided appellate court found that any error caused by the introduction of the undisclosed conversation was harmless error because at closing argument the defendant maintained that she was guilty of voluntary manslaughter, not murder, which was precisely the verdict the jury returned. The dissent expressed the opinion that the defendant did not receive a fair trial because the jury was also instructed on the lesser offense of involuntary manslaughter, and Patricia Stanford's testimony about the defendant's call to Teledyne suggested to the jury that the defendant acted deliberately and not recklessly.

Supreme Court Rule 412(a)(ii) (107 Ill. 2d R. 412(a)(ii)) provides in pertinent part:

"(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

\*\*\*

(ii) any written or recorded statements and the substance of any oral statements made by the accused \*\*\* and a list of witnesses to the making and acknowledgment of such statements."

Supreme Court Rule 412(a)(ii) (107 Ill. 2d R. 412(a)(ii)) was promulgated to protect a defendant against surprise, unfairness, and inadequate preparation (*People v. Patterson* (1981), 102 Ill. App. 3d 844, 847), as well as to afford the defense an opportunity to investigate the circumstances surrounding the statement. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 836.) The rule is intended to encompass all statements made by a defendant which might have a bearing on the defendant's guilt or innocence. *People v. Weaver* (1982), 92 Ill. 2d 545, 558.

We find in this appeal that the State's failure to disclose defendant's alleged statements constituted a violation of Supreme Court Rule 412(a)(ii). (107 Ill. 2d R. 412(a)(ii).) However, the failure to comply with discovery requirements does not in all instances necessitate a new trial. (*People v. Greer* (1980), 79 Ill. 2d 103, 120.) A new trial should only be granted if the defendant is prejudiced by the discovery violation and the trial court failed to eliminate the prejudice. (*People v. Weaver* (1982), 92 Ill. 2d 545, 560.) Among the factors to be considered in determining whether a new trial is warranted are the closeness of the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice could have helped the defense discredit the evidence. *People v. Weaver* (1982), 92 Ill. 2d 545, 559.

In the instant case, although we in no way condone the inaction of the State in failing to divulge this information prior to trial, we, nevertheless, believe that the defendant did not suffer sufficient prejudice so as to justify a reversal of her conviction. Defense counsel was given the opportunity to extensively cross-examine Patricia Stanford and was also allowed to recall the defendant on surrebuttal. As a result, defendant was able to effectively impeach the substance of Patricia Stanford's testimony by demonstrating that the defendant was incarcerated at the time of her alleged telephone call to Teledyne, that she could only make collect calls, and that Teledyne did not accept collect calls. In light of the fact that Ms. Stanford's testimony was severely discredited, there appears to be little more, if anything, defense counsel could have done had he been earlier advised of the existence of the statement. The defendant has not demonstrated to this court how any further investigation into the defendant's alleged conversation with Patricia Stanford would have altered the defendant's trial strategy and possibly changed the outcome of this case.

We also find, as did the appellate court, that defense counsel argued almost exclusively during closing argument that defendant was guilty of voluntary manslaughter rather than murder, which, in fact, was precisely the verdict the jury returned. After reciting the elements of voluntary manslaughter in light of the evidence presented at trial, defense counsel stated, "[I]f that's not Mary Cisewski in a nutshell, I don't know what is." Although defense counsel paid lip service to the theory of involuntary manslaughter, he could cite little evidence which would substantiate such a finding. Our review of the record in this case reveals that, even without Patricia Stanford's testimony, there was more than enough evidence from which the jury could have disbe-

lieved defendant's testimony that she did not intend to kill Donald and that her conduct amounted to mere recklessness. The question of intent is one for the jury to resolve and that finding will not be reversed on appeal unless the finding is inherently impossible or unreasonable. (See *People v. Almo* (1985), 108 Ill. 2d 54; *People v. Johnson* (1979), 70 Ill. App. 3d 149.) From our review of the record in this case, we find that the jury's verdict was not palpably contrary to the weight of the evidence presented.

In urging this court to reverse the appellate court's finding of harmless error, the defendant relies on *People v. Weaver* (1982), 92 Ill. 2d 545. In *Weaver*, a witness called by the State testified to a statement made by the defendant. The prosecutor had failed to inform defense counsel of this statement prior to trial. As soon as the witness testified concerning this statement, defense counsel moved to strike the testimony or, in the alternative, that a mistrial be granted. The trial court denied these motions, but offered to give defense counsel an opportunity to put Miss Weaver back on the stand and cross-examine her, and told defense counsel he would be given time to talk to her first. Defense counsel declined the opportunity, arguing that in light of the fact that Miss Weaver had already testified, he could not possibly remedy the damage in any way.

*Weaver* is clearly distinguishable from the instant case. Here, Patricia Stanford did not testify as to the statement before defense counsel had an opportunity to object. As previously explained, a few days before Patricia Stanford testified, the prosecutor advised defense counsel of the substance of the testimony she was expected to present. While in *Weaver* there was no time to request a continuance before the testimony was heard, such was obviously not the case here. Clearly, the defendant in this case had sufficient time to request a

continuance to investigate the circumstances of the alleged statement, but, for whatever reason, chose not to do so. A defendant cannot complain of prejudice when she fails to request a continuance for investigation of the alleged statement and instead proceeds with trial. (See *People v. Foster* (1979), 76 Ill. 2d 365; *People v. Steel* (1972), 52 Ill. 2d 442; see also *People v. Stewart* (1984), 105 Ill. 2d 22.) Furthermore, the defense counsel in *Weaver* sufficiently demonstrated to this court how his trial strategy would have been different had he known of the statement prior to the trial and how alternative strategies might have resulted in a different outcome. As stated previously, the defense counsel in the instant case has made no such showing, nor can this court determine, in light of the fact that Patricia Stanford's testimony was impeached, how any alternative trial strategy could have been more effective. Unlike the situation presented in *Weaver*, we do not believe that prior disclosure of the statement could have altered the outcome of the trial in this case.

The second issue presented in this appeal is whether certain statements made by the prosecutor during closing rebuttal argument deprived the defendant of a fair trial. In reviewing the defendant's allegations of error here, we first note that a prosecutor is allowed a great deal of latitude in making the closing argument (*People v. Stock* (1974), 56 Ill. 2d 461, 467; *People v. Neumann* (1986), 148 Ill. App. 3d 362, 373-74), and the trial court's determination of the propriety of the argument will generally be followed absent a clear abuse of discretion (*People v. Smothers* (1973), 55 Ill. 2d 172, 176). To constitute reversible error, the complained-of remarks must have resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different. (*People v. Morgan* (1986), 112 Ill. 2d 111, 132.) In reviewing allegations of prosecutorial misconduct, the

closing arguments of both the State and the defendant must be examined in their entirety and the complained-of comments must be placed in their proper context. See *People v. Nemke* (1970), 46 Ill. 2d 49, 59.

The defendant's first allegation of error in this case involved the prosecutor's statement to the jury, "Let's take a real close look at the defense of paranoia *** and we'll show you it's all a fabrication." Our review of the record indicates that this comment was not objected to at trial or raised in the motion for a new trial, which, of course, constituted a waiver of the right to raise this issue on appeal. (*People v. Adams* (1985), 109 Ill. 2d 102, 116; *People v. Jackson* (1981), 84 Ill. 2d 350, 358.) However, even assuming, *arguendo*, the issue had been preserved for appeal, this comment does not constitute reversible error. We have examined the context in which the above statement was made and find that it does not amount to an accusation that defense counsel fabricated a defense and encouraged the defendant to testify accordingly. (See *People v. Freedman* (1954), 4 Ill. 2d 414, 421.) The prosecutor was merely suggesting that, in light of Dr. Stipes' failure to find defendant insane, defendant's only alternative was to advance a defense of paranoia. The prosecutor was not suggesting that defense counsel concocted a baseless defense and encouraged defendant to lie about her paranoia, or that defense counsel somehow misrepresented the facts. Clearly, this comment did not rise to the level of impeaching defense counsel's integrity as in *People v. Emerson* (1983), 97 Ill. 2d 487, 497, where the prosecution in that case accused the defense attorney of laying down a smoke screen "composed of lies and misrepresentations, and innuendoes." We, therefore, conclude that, when read in its proper context, no prejudicial error occurred here as a result of the prosecutor's remark.

The second allegation of error here involves the prosecution's argument that the defense in this case was premised on the defendant's belief that if she convinced the jury that she was paranoid, "they [the jury] can find me [the defendant] guilty of voluntary manslaughter and I [the defendant] can walk out of that door today. I [the defendant] can be home before the jurors are home, if they find me [the defendant] guilty. It is a fact ladies and gentlemen." Defense counsel's objection to the statement was immediately sustained by the trial court. Later, the trial court instructed the jury to consider only the evidence in the case and warned the jury that closing arguments are not evidence and that arguments not based on the evidence must be disregarded. The trial judge also admonished the jury "not to concern yourself with possible punishment or sentence for the offense charged during your deliberation."

Defendant asserts that the prosecution prejudiced defendant by misinforming the jury that a voluntary manslaughter conviction would result in no punishment at all for the defendant. She argues that the jury's verdict may reflect the view that the defendant would go free if they returned a verdict of guilty of voluntary manslaughter, and therefore the statement was highly prejudicial.

This court has held that it is error for a prosecutor to argue to the jury the punitive effect of the verdict when the jury will have nothing to do with fixing punishment. (*People v. Galloway* (1963), 28 Ill. 2d 355, 362.) However, such information may form the basis for a reversal only if it is a material factor in the conviction of a defendant. See *People v. Cimino* (1970); 45 Ill. 2d 556.

In the instant case, the prosecutor's comment was brief and unrepeated. The defendant's immediate objection to this isolated comment was sustained by the trial court and additional curative instructions were tendered

at the close of the trial. It is well settled that "[i]f a timely objection is made at trial ***, the court can, by sustaining the objection or instructing the jury to disregard the answer or remark, usually correct the error." (*People v. Carlson* (1980), 79 Ill. 2d 564, 577; see also *People v. Baptist* (1979), 76 Ill. 2d 19.) Although we believe this comment would have been best left unsaid by the prosecutor, in light of the overwhelming evidence of defendant's guilt, we cannot say that the verdict would have been different absent this single isolated remark.

The defendant's third allegation of error in this case involves the prosecutor's statement to the jury, "Now is the time, Ladies and Gentlemen, to remove the cloak of innocence from this defendant and join Donald in saying 'No Mary, No Mary.' " We find no error in the prosecutor's comment. It is fundamental that a prosecutor may argue that the defendant is guilty when she states, or it is apparent, that such argument is based solely on the evidence. (See *People v. Tiller* (1982), 94 Ill. 2d 303, 319.) Immediately prior to making this statement, the prosecutor said in closing argument:

> "Ladies and Gentlemen, consider all of the evidence when you go back to deliberate. Consider the photographs. Remember what the defendant told the police immediately after the killing. Remember what Doctor Stipes said he believed the defendant believed, at that time."

Clearly, when the prosecutor's comment is read in its entirety, it is apparent that her argument regarding defendant's guilt was based on the evidence presented in the case and not on her own personal beliefs.

For the reasons stated herein, the judgments of the appellate and circuit courts are affirmed.

*Judgments affirmed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.