No. 1–00–1796    First Division    

        October 15, 2002

THE PEOPLE OF THE STATE OF ILLINOIS ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

) 99 CR 7770

)

IGNACIO BATREZ, ) The Honorable

) Edward M. Fiala, Jr.,

Defendant-Appellant. ) Judge Presiding.

JUSTICE COHEN delivered the opinion of the court:

Following a bench trial, defendant Ignacio Batrez was found legally accountable (720 ILCS 5/5-2(c) (West 1998)) for the offense of delivery of a controlled substance (cocaine) in an amount greater than 15 but less than 100 grams (720 ILCS 570/401(a)(2)(A) (West 1998)).  Defendant was sentenced to six years' imprisonment.  On appeal, defendant argues that he is entitled to a new trial because: (1) the trial court erred in permitting a police officer to testify as to the substance of her telephone conversation with defendant where the State failed to properly disclose the substance of that conversation to defendant prior to trial pursuant to Supreme Court Rule 412(a)(ii) (134 Ill. 2d R. 412(a)(ii)); (2)  defendant was deprived of effective assistance of counsel where counsel failed to investigate the substance of the telephone conversation and such ineffectiveness rendered defendant's jury waiver invalid; and (3) the trial court erred in admitting, pursuant to the coconspirator exception to the hearsay rule, a statement made by the codefendant.  For the following reasons, we affirm.

BACKGROUND

Defendant and codefendant Jose Pico were charged by indictment with the unlawful delivery of more than 15 but less than 100 grams of a controlled substance (cocaine) (720 ILCS 570/401(a)(ii)(A) (West 1998)).  Defendant and Pico were tried separately.

At the beginning of defendant's trial, defense counsel indicated that defendant wished to waive his right to a jury trial.  Upon questioning by the trial judge, defendant acknowledged both that his lawyers had explained "what a jury is" and that he understood "what a jury is."  Defendant confirmed that he wished to give up his right to a jury.  Defendant acknowledged his signature on the jury waiver form and stated that his lawyers had explained the waiver form to him.  The trial court accepted defendant's jury waiver and the matter proceeded to a bench trial.

Officer Donna Salvage testified that on September 10, 1998, she was performing undercover work in controlled narcotics transactions as part of a team.  During the afternoon of September 10, 1998, Officer Salvage telephoned defendant, whom she knew by the nickname "Nacho."  Officer Salvage testified that, at the time of this telephone call "we
(footnote: 1) were on the street in a prearranged location near the area of the buy."  The prosecution then asked Officer Salvage to indicate the nature of her telephone conversation with defendant.  Defense counsel objected, arguing that the State had failed to disclose the substance of the telephone conversation pursuant to Supreme Court Rule 412.  The State responded that "the summary of the conversation" was contained within Officer Salvage's police report, which had been disclosed to defendant prior to trial.

Officer Salvage's police report states in relevant part as follows:

"After a prearranged phone call between UCO Salvage and [defendant,] a mobile and stationary surveillance had been established in the area, this UCO then approached the area and parked her UCV at the prearranged parking lot (4713 S. Justine).  UCO waited in this lot approx. 15 minutes from phone call, when UCO Salvage was met by [defendant] and [codefendant] Pico who pulled up in a white 4 door car.  UCO Salvage was approached by both offenders and asked by [defendant] 'how much coke (street term for cocaine) do you want'? [
sic
] UCO Salvage said, '3 oz's['] (street term for 28 grams which is an ounce of cocaine)."

The trial court overruled defendant's objection, noting:

"I have considered first of all I don't see a surprise to the defense, in that they were apprized that there had been a conversation between this witness and the defendant.  And thereafter, something else was set up.  I think that you would have the opportunity to interview this witness if you chose to do so.  And I don't see any prejudice."

Officer Salvage then testified that "the nature of the phone conversation" with defendant was "[s]etting up a drug deal for that day."  Officer Salvage testified that she asked defendant if he could "provide [her] with some cocaine."  According to Officer Salvage, defendant agreed to provide the cocaine, told Officer Salvage "the amount that it would cost," and selected a time and location for the transaction.  Officer Salvage then proceeded to the arranged location in her undercover vehicle.  Defendant arrived at the location a short time later driving a white Chevrolet Celebrity (hereafter, the Chevrolet) with codefendant Pico sitting in the front passenger seat.  Defendant and Pico exited the Chevrolet and approached Officer Salvage.  Defendant asked Officer Salvage how much cocaine she needed and she asked for three ounces (approximately 84 grams).  Defendant then told Officer Salvage to "give [him] five minutes and [he would] be right back."  Pico and defendant then left in the Chevrolet.

Approximately five minutes later, Pico returned alone in the white Chevrolet, parked and motioned for Officer Salvage to come to the vehicle.  Officer Salvage approached and entered the Chevrolet.  The prosecuting attorney asked Officer Salvage about a discussion she then had with Pico.  Defense counsel objected, arguing that any statements made by Pico were inadmissible hearsay and that the State had not presented sufficient independent evidence of a conspiracy to permit admission of Pico's statement pursuant to the coconspirator exception to the hearsay rule.  The trial judge overruled the objection.  Officer Salvage proceeded to testify that she asked Pico, "Where the hell is [defendant]?" and Pico responded, "[H]e had shit to do, and *** I am his partner.  You can deal with me."  Defense counsel renewed his objection, citing 
People v. Deatherage
, 122  Ill. App. 3d 620 (1984) as an analogous case.  After reviewing 
Deatherage,
 the trial judge found that a joint venture between Pico and defendant had been established by a preponderance of the evidence and again overruled the objection.

Finally, Officer Salvage testified that Pico exited the Chevrolet, removed a black plastic bag from behind the rear driver's side hubcap, and returned to the driver's seat.  Pico then removed three smaller, clear plastic bags which he tendered to Officer Salvage in exchange for $2,500 cash.  Officer Salvage returned to her vehicle with the plastic bags, waited for Pico to leave, and then radioed her team that "it was a positive narcotics transaction."  The three plastic bags were later inventoried at the police station.

Officer Salvage identified several photographs taken by a surveillance team that were then admitted into evidence.  Officer Salvage testified that the first photograph depicted defendant and Pico in the white Chevrolet when they first arrived at the scene of the narcotics transaction.  The second photograph, taken from behind, also depicted defendant and Pico in the Chevrolet.  A third photograph revealed the license plate of the white Chevrolet.  These photographs were not included in the record on appeal.

On cross-examination, Officer Salvage was unable to recall the telephone number she had used to call defendant to arrange the narcotics transaction and admitted that she had no documentary evidence that the call had been placed.  Officer Salvage further admitted that she did not summarize the content of her telephone conversation with defendant in her written police report.  After defense counsel asked if Officer Salvage had seen any surveillance photograph corroborating her testimony that defendant and Pico approached  the officer's vehicle  to negotiate the transaction, the parties stipulated that no such photograph existed. 

Finally, the State submitted into evidence a certified record from the office of the Secretary of State demonstrating that the white Chevrolet belonged to defendant.  The parties then stipulated that, if called, forensic scientist Fumi Moka would testify that the plastic bags inventoried by Officer Salvage contained 84.9 grams of a chunky powder which tested positive for cocaine.  The State rested.

The trial court denied defendant's motion for a directed verdict.

Testifying on his own behalf, defendant denied having a telephone conversation on September 10, 1998, with Officer Salvage regarding a narcotics transaction, denied going to the location of the transaction with Pico receiving any money from Pico on that date, and denied that he owned the white Chevrolet on that date.  Defendant testified that he had sold the white Chevrolet to Pico in August 1998 but, because Pico was paying installments on the price of the vehicle, defendant had not yet transferred registration of the title to Pico.  Defendant denied that he was depicted in the State's photographic exhibits, although he acknowledged that the person depicted "may look like" him.  Finally, defendant testified to a series of occurrences that took place in August and September 1999 in which defendant, his wife and his two children were photographed in public places by people they did not know.  On cross-examination, defendant testified that Pico had returned the Chevrolet to defendant after the car broke down and that the vehicle is currently stored at defendant's father's house.  The defense then rested.

The trial court found defendant guilty based on accountability (720 ILCS 5/5-2(c) (West 1998)) of delivery of a controlled substance (cocaine) in an amount greater than 15 but less than 100 grams (720 ILCS 570/401(a)(2)(A) (West 1998)).  The trial court denied defendant's posttrial motion  for a new trial and sentenced him to six years' imprisonment.  Defendant appeals.

ANALYSIS

I.  Failure to Disclose

Defendant first argues that the trial court erred in allowing Officer Salvage to testify regarding the substance of her telephone conversation with defendant where the State failed to properly disclose the substance of that conversation despite defendant's written motion pursuant to Supreme Court Rule 412 (134 Ill. 2d R. 412).  Supreme Court Rule 412(a)(ii) requires the State, upon written motion of defendant, to disclose "any written or recorded statements and the substance of any oral statements made by the accused *** and a list of witnesses to the making and acknowledgment of such statements."  134 Ill. 2d R. 412(a)(ii).  Supreme Court Rule 412(a)(ii) was promulgated to protect a defendant against surprise, unfairness, and inadequate preparation.  
People v. Cisewski
, 118 Ill. 2d  163, 172 (1987).  While Supreme Court Rule 412(a)(ii) does not require the prosecution to disclose a defendant's oral statements verbatim, the State is obligated to disclose the substance of those statements.  
People v. Hemphill
, 230  Ill. App. 3d 453, 464 (1992).

A.  Waiver

The State asserts that defendant, by failing to request a continuance, has waived any claim that the trial court erred in permitting testimony regarding the telephone conversation.  Our supreme court in 
People v. Robinson
, 157 Ill. 2d 68, 78-79 (1993), found that a defendant waived the issue of late disclosure by failing to request a continuance where a continuance would have remedied the problem of late disclosure.  The court reasoned that a "defendant cannot request only the most drastic measures, such as either an immediate mistrial or the total exclusion of testimony by a witness, and then on appeal argue that he is entitled to a new trial when these requests are not granted."  
Robinson
, 157 Ill. 2d at 78-79.  Defendant contends that "the 
Robinson
 decision cites no authority for its holding and should be limited to its facts."  We note, however, that 
Robinson
 is a decision of our supreme court, which we are bound to follow.  
People v. Tisdel
, 316  Ill. App. 3d 1143, 1155 (2000).  As nothing in 
Robinson
 suggests that the court's holding is limited to the facts of that case and because we are bound to follow supreme court precedent, we find 
Robinson
 directly applicable in this case and conclude that the issue is waived.  
Robinson
, 157 Ill. 2d at 78-79.

Defendant further responds that he "gets around the waiver issue" by claiming his counsel was ineffective for failing to request a continuance.  Defendant, however, did not assert in his opening brief that counsel was ineffective for failing to request a continuance but only that counsel was ineffective for failing to investigate the substance of the telephone conversation.  Arguments not raised in the appellant's opening brief are waived.  177 Ill. 2d R. 341(e)(7); 
People v. Berg
, 39  Ill. App. 3d 455, 457 (1976).

B.  Prejudice

Even had defendant properly preserved for review his challenge based on the State's failure to disclose the telephone statement, he would not have prevailed.  It must be noted, we agree with defendant that Officer Salvage's police report clearly did not satisfy the State's burden  under Supreme Court Rule 412(a)(ii).  The record demonstrates that Officer Salvage's report disclosed neither the substance of defendant's telephone statement nor a list of witnesses to the making or acknowledgment of the statement, as required under Rule 412(a)(ii).  Indeed, Officer Salvage expressly admitted at trial that she did not summarize the telephone conversation in her police report.  The State's suggestion that the substance of the conversation could be inferred from the report's description of the circumstances which developed immediately following the conversation is not well taken.  Supreme Court Rule 412(a)(ii) requires the State to disclose–not merely hint at–the substance of a defendant's oral statements.  See 
People v. Pasch
, 152 Ill. 2d 133, 193 (1992) ("Rule 412 was not designed to require defense counsel to make assumptions ***.")  "However, the failure to comply with discovery requirements does not in all instances necessitate a new trial."  
Cisewski
, 118 Ill. 2d at 172.  

"A new trial should only be granted if the defendant is prejudiced by the discovery violation and the trial court failed to eliminate the prejudice."  
Cisewski
, 118 Ill. 2d at 172.  The burden of showing surprise or prejudice is upon the defendant.  
Robinson
, 157 Ill. 2d at 78.  Among the factors to be considered in determining whether a new trial is warranted are the closeness of the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice could have helped the defense discredit the evidence.  
Cisewski
, 118 Ill. 2d at 172. 

Here, the evidence of defendant's guilt was not close.  Defendant argues that the case turned on a credibility contest between defendant and Officer Salvage.  The record, however, reflects that no evidence was presented corroborating defendant's testimony. In contrast, Officer Salvage's testimony was corroborated by: (1) certified records demonstrating defendant's ownership of the white Chevrolet Celebrity used in the narcotics transaction; (2) defendant's own testimony that the Chevrolet was in his possession and stored at his father's house at the time of trial; and (3) photographs depicting defendant in the driver's seat of the white Chevrolet at the scene of the crime.  Although defendant testified that the photographs only depicted someone who "look[ed] like" him, neither the photographs nor evidence of defendant's appearance at the time of trial was made part of the record on appeal.  Any doubts arising from the incompleteness of the record will be construed against defendant whose responsibility it was as appellant to present a complete record on review.  
People v. Adams
, 128  Ill. App. 3d 725, 729 (1984);
 Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92 (1984).

Furthermore, the evidence of defendant's telephone statements was not particularly damaging.  Although the statements indicated that defendant agreed to deliver cocaine to Officer Salvage at a designated time and place, this evidence was merely cumulative.  Defendant's agreement to deliver cocaine was independently established by Officer's Salvage's testimony that: (1) defendant approached her vehicle, asked "how much cocaine do you need?"; and (2) when Officer Salvage told defendant she wanted three ounces, defendant responded, "give me five minutes and I will be right back.".  

Incredibly, defendant suggests that without the statement made in the telephone conversation, the question in the police report as to how much "coke" Officer Salvage wanted was "meaningless because, without the non-disclosed [
sic
]
 statement evidencing knowledge of the illicit nature of the transaction, the State cannot prove that the 'coke' statement was made with the intent to promote or facilitate the offense."  This court, however, is hardly so naive as to entertain a belief that defendant was offering to sell three ounces of a brand name cola beverage or bituminous coal residue to a random motorist.  See, 
e.g.
, American Heritage Dictionary 290 (2d College ed. 1982) (defining "coke" as: (1) a trademark for a soft drink; (2) a solid carbonaceous residue obtained from bituminous coal; or (3) slang for cocaine). 

Finally, defendant failed to establish any likelihood that earlier disclosure would have helped him to discredit the evidence against him.  In arguing that he was prejudiced, defendant focuses on the damaging nature of the testimony, arguing that "[w]ithout such evidence, [defendant] is not accountable for a transaction completed by Mr. Pico."  Our inquiry, however,  is not whether the evidence itself was damaging (in this sense, all evidence tending to establish guilt is "prejudicial") but rather whether defendant was prejudiced by the State's failure to properly disclose the evidence prior to trial.  
Cisewski
, 118 Ill. 2d at 172 ("A new trial should only be granted if the defendant is prejudiced 
by the discovery violation
 ***" (emphasis added)).  Defendant does not suggest how earlier disclosure would have enabled him to discredit Officer Salvage's testimony.  Indeed, defense counsel's failure to request a continuance " 'is persuasive evidence that the prejudice alleged was in fact trivial.' "
  People v. Weaver
, 92 Ill. 2d 545, 559 (1982), quoting 
People v. Foster
, 76 Ill. 2d 365, 384 (1979). 

Even had defendant not waived this issue by failing to request a continuance, after weighing the relevant factors we would not find that he was prejudiced by the late disclosure.

II.  Ineffective Assistance of Counsel

A.  Failure to Investigate

Defendant alternately argues that his trial counsel, having received the above-mentioned police report, was ineffective for failing to investigate the nature and substance of the telephone conversation. 
    In order to establish a claim of ineffective assistance of counsel, the defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's shortcomings were so serious as to " 'deprive the defendant of a fair trial, a trial whose result is reliable.' "  
People v. Albanese
, 104 Ill. 2d 504, 525-27 (1984), quoting 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052  (1984).  To meet the second prong of this test, a defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
People v. Nieves
, 192 Ill. 2d 487, 494 (2000).  If a defendant's claim of ineffective assistance can be disposed of based on a failure to establish prejudice, then the court need not examine whether counsel's performance was deficient.  
People v. Mahaffey
, 194 Ill. 2d 154, 175 (2000).

Even assuming 
arguendo
 that defendant's trial counsel fell below an objective standard of reasonableness by failing to investigate the substance of the telephone conversation, defendant has failed to demonstrate that further investigation would have altered the outcome of the trial.  Defendant does not suggest and the record does not indicate that further investigation would have uncovered exculpatory evidence or evidence discrediting Officer Salvage's testimony.  Rather, defendant argues that, "[h]ad he known [the substance of the telephone conversation,] he could have better evaluated his decision to go to trial" and "could have pursued other avenues, short of trial, in an attempt to avoid a mandatory minimum for a Class X felony conviction."  Defendant seems to be suggesting that, had counsel learned of the substance of the telephone conversation, he could have advised defendant to plead guilty in exchange for lesser charges.  Nothing in the record demonstrates a reasonable probability that: (1) the State would have been willing to enter into a plea bargain, (2) defense counsel's advice to defendant on this point would have changed had he known the substance of the conversation; or (3) defendant–who at trial vigorously denied even being present at the transaction–would have been willing to plead guilty.   Defendant's claim of ineffectiveness fails as defendant has failed to demonstrate that he was prejudiced by counsel's alleged unprofessional error.  
Nieves
, 192 Ill. 2d at 494.

B.  Jury Waiver

Defendant argues separately that his trial counsel's ineffectiveness in failing to investigate the substance of the telephone conversation "rendered defendant's jury waiver invalid."  When a defendant's challenge to a jury waiver is predicated on a claim of ineffective assistance of counsel, the court must determine: (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) "whether there exists a reasonable likelihood that the defendant would not have waived his jury right in the absence of the alleged error. " 
People v. Maxwell
, 148 Ill. 2d 116, 142-43 (1992).

Defendant argues that his trial counsel clearly relied on a technical legal defense that defendant's mere presence at the scene was insufficient to establish legal accountability for Pico's delivery of the cocaine.  According to defendant, Officer Salvage's testimony regarding the substance of her telephone conversation with defendant "turned a legal issue case into a credibility case."  Defendant, quoting 
People v. Dixon
, 184  Ill. App. 3d 90, 99 (1989), notes that "waiver [of the right to be tried by jury is] a legitimate trial strategy *** [where the] defendant's defense was a very technical one and a jury might not fully understand or accept such a defense."   Defendant insists that he was "in effect forced to take a bench trial and forgo a jury based on the mistake of trial counsel, who believed that the defense in the case was a legal one." 

While we acknowledge that a jury waiver is a legitimate strategy where the defense is technical in nature (
Dixon
, 184  Ill. App. 3d at 99), we are aware of–and defendant points to–no authority suggesting that a jury waiver is somehow not a legitimate strategy where credibility is at issue.  We reject any such contention.  Defendant does not and could not persuasively demonstrate a "reasonable probability" that a jury would have reached a different conclusion as to credibility than that reached by the trial judge.  
People v. Elliott
,
 
299 
 
Ill. App. 3d
 
766, 776 (1998).  

Further, contrary to defendant's assertion that the undisclosed statement "turned a legal case into a credibility case," the record demonstrates that proof of defendant's accountability rested on a credibility determination even without Officer Salvage's testimony regarding the telephone conversation.  To establish defendant's accountability for Pico's delivery of cocaine, the State was required to prove that defendant "[e]ither before or during the [delivery], and with the intent to promote or facilitate [the delivery], *** solicit[ed], aid[ed], abet[ted], agree[d] or attempt[ed] to aid [Pico] in the planning or commission of [the delivery of cocaine]."  720 ILCS 5/5–2(c) (West 1998).   Officer Salvage testified at trial (consistent with her previously disclosed police report) that defendant had approached her undercover vehicle and asked, "how much cocaine do you need?"   Evidence that defendant asked this question undeniably demonstrates defendant's role in intentionally facilitating the narcotics transaction and supports a finding that defendant was legally accountable for the sale ultimately consummated by codefendant Pico.  Absent evidence regarding the substance of the telephone conversation, this case still turned on whether the trier of fact found Officer Salvage's testimony more credible than defendant's testimony.   

Even were we to accept defendant's suggestion that testimony regarding the substance of the telephone conversation somehow dramatically altered the nature of his defense, defendant has failed to demonstrate "a reasonable likelihood that [he] would not have waived his jury right" had defense counsel learned the substance of the telephone conversation prior to trial.  
Maxwell
, 148 Ill. 2d at 143.   Significantly, nothing in the record suggests that defendant chose to waive his right to a jury trial based on any advice of counsel that the defense in this case rested on a technical legal issue rather than on credibility.  Indeed, "the record is silent on the reason for defendant's jury trial waiver."  
Elliot
, 299  Ill. App. 3d at 774.  We reject defendant's claim that counsel's failure to investigate invalidated defendant's jury waiver.  
Maxwell
, 148 Ill. 2d at 143.

III.  Coconspirator Hearsay

Finally, defendant argues that the trial court erred in allowing Officer Salvage to testify regarding codefendant Pico's hearsay statement that Pico was defendant's "partner."  The declarations of a coconspirator made in furtherance of the conspiracy are admissible against a defendant upon an independent, 
prima facie
 showing of a conspiracy or joint venture between the declarant and defendant.  
People v. Steidl
, 142 Ill. 2d 204, 234 (1991).  In order to establish a 
prima facie
 showing of a conspiracy or joint venture, the State must prove by a preponderance of the evidence (independent of the coconspirator's hearsay statements) that: (1) two or more persons intended to commit a crime; (2) they engaged in a common plan to accomplish the criminal goal; and (3) an act or acts were done by one or more of them in furtherance of the conspiracy.  
People v. Roppo
, 234  Ill. App. 3d 116, 123 (1992); 
People v. Barnett
, 226  Ill. App. 3d 397, 411 (1992).

The existence of a conspiratorial agreement need not be proven by direct evidence but, rather, may be inferred from all surrounding facts and circumstances, including the acts and declarations of the accused.  
People v. Melgoza
, 231  Ill. App. 3d 510, 521 (1992).  Because of the clandestine nature of conspiracy, Illinois courts permit broad inferences to be drawn from the circumstances, acts, and conduct of the parties.  
Melgoza
, 231  Ill. App. 3d at 523.  Coconspirators' "suspicious activities together while the illegal transaction was in progress are sufficient to show a joint venture together."  
Melgoza
, 231  Ill. App. 3d at 524.  It is not mandatory that evidence supporting a 
prima facie
 showing of a conspiracy be introduced prior to admission of the coconspirator's hearsay statement.  
People v. Goodman
, 81 Ill. 2d 78, 284 (1980).

Defendant argues that no evidence was presented independent of Pico's statement which would establish a 
prima facie
 showing of conspiracy or joint venture.  The record, however, belies defendant's argument.  At trial, Officer Salvage testified that after defendant and Pico pulled up in the white Chevrolet, the two exited their vehicle and approached the officer.  Defendant then asked, "how much cocaine do you need?"  When Officer Salvage requested three ounces of cocaine, defendant told her to "give [him] five minutes and [he would] be right back."  Pico then returned five minutes later, removed three ounces of what later proved to be cocaine from behind the hubcap of the white Chevrolet, and completed the transaction with Salvage.  Certified records were presented demonstrating that defendant is the registered owner of the white Chevrolet.  Photographic evidence corroborated Officer Salvage's testimony by depicting defendant's presence at the scene of the crime.

Defendant argues that mere presence, association, knowledge or approval of a conspiracy is insufficient to establish that defendant was involved in a conspiracy or joint venture.  See 
People v. Deatherage
, 122  Ill. App. 3d 620 (1984); 
People v. Roppo
, 234  Ill. App. 3d 116 (1992).  The above evidence, however, demonstrates more than defendant's mere presence at the scene of the illegal transaction.  Rather than standing idly by, defendant drove to the arranged location and negotiated the amount of cocaine to be sold.  Defendant's vehicle was used for concealing the drugs and for making the final delivery.  Defendant's and Pico's suspicious activities together under the circumstances described are clearly adequate to permit an inference that defendant and Pico were involved in a conspiracy or joint venture to deliver cocaine.  
Melgoza
, 231  Ill. App. 3d 523-24.

Because the State established a 
prima facie
 showing of conspiracy by a preponderance of the evidence, the trial court did not err in admitting Pico's statement pursuant to the coconspirator exception to the hearsay rule.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McNULTY and COUSINS, JJ., concur

FOOTNOTES
1:

  It is unclear from the record precisely to whom the "we" referred.