THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELIJAH FRAZIER, Defendant-Appellant.

First District (1st Division)   No. 81-426

Opinion filed July 12, 1982.

Edward M. Genson and Marvin Bloom, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Paula Cartensen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

A jury found Elijah Frazier (defendant) guilty of rape. The trial court sentenced him to six years in prison. Defendant appeals his conviction.

On appeal, defendant argues that (1) he was denied a fair trial by a prosecutor's inquiry into an argument relating to defendant's failure to inform police officers in his post-arrest statements that complainant had asked for money during the sex act; (2) he was unduly prejudiced by the State's introduction of evidence regarding defendant's alleged offer of $1,000 to complainant to drop charges against him; (3) defendant was denied a fair trial due to ineffective assistance of counsel; and (4) the

State's closing argument was so highly prejudicial that defendant was denied his right to a fair and impartial trial.

We reverse and remand.

On the evening of October 7, 1979, complainant attended a party in her building at the apartment of her friend Sam Johnson. Johnson called his friend Elijah Frazier (defendant) to invite him to the party. While the two were conversing, complainant picked up the telephone and invited defendant to come over and join the party. Defendant accepted the invitation.

Johnson corroborated defendant's testimony that he (defendant) and complainant spent several hours that evening talking, dancing, kissing and fondling. Complainant claimed that she danced with defendant only once and that when defendant kissed her, she did not kiss him back.

Complainant left the party at 9 p.m. and returned a short while later. In the course of the next several hours, the others in attendance at the party gradually began to leave. Johnson and his girl friend Mary Kirk left to go to Kirk's apartment, leaving defendant and complainant alone in Johnson's apartment. Complainant testified that when she began to leave, defendant grabbed her and said "I want you, I got to have you." She claimed that a struggle ensued and defendant forced her to engage in intercourse. Defendant testified that after Johnson left the apartment, he and complainant exchanged passionate words, disrobed and engaged in consensual intercourse.

Complainant testified that after the rape, while defendant was straightening up the apartment and pulling out the bed, she ran from the apartment to Mary Kirk's apartment. The time was approximately 3:30 a.m. and complainant was clad in a long blouse and bra. Complainant told Kirk she had been raped. She called the police and was taken to the hospital. Hospital reports showed that complainant had sustained bruises on her hand and elbows and a scratch across her collar bone.

Defendant was apprehended early the following morning and taken to police headquarters. Officer David Dioguardi testified that he saw defendant at police headquarters and noticed a red mark on defendant's left hand which showed the indentation of teethmarks. Defendant explained that complainant had become extremely upset for no apparent reason after they had had intercourse and had bitten him on the hand. Defendant testified at trial that after he and complainant had engaged in intercourse, complainant asked him for some money and that when he refused to pay, she left the apartment wearing only a blouse.

Two weeks after the alleged rape, Johnson came to complainant's apartment and asked her to go with him and defendant to a currency exchange. Complainant agreed. She testified that defendant requested that she sign an agreement to drop charges against him in exchange for

$1,000. After they arrived at the currency exchange, defendant attempted but was unable to get the $1,000. Complainant telephoned her father from the currency exchange. Her father told her that if defendant "didn't have the grand then we press charges." Complainant stated that she did not sign the papers or accept any money. She also testified that she would have dropped the charges if defendant had come up with the money. Complainant pressed charges. After a jury trial, defendant was found guilty of rape. He now appeals.

First, defendant argues that he was denied a fair trial by the State's inquiry into an argument relating to defendant's failure to inform police officers in his post-arrest statements that complainant had asked him for money during the sex act. After his arrest, defendant told the police that complainant had consented to sexual intercourse. He also told police that she had become upset after having sex and claimed that he did not know what had caused her to become upset. At trial, defendant testified that complainant had asked for money in exchange for sex and had become angry when he refused to pay. The State maintains that it was proper for the prosecutor to cross-examine defendant in regard to the inconsistencies between his post-arrest statement to the police and his trial testimony and that it was proper to point out the inconsistencies during closing argument.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the United States Supreme Court established a constitutional bar to the use of a defendant's post-arrest silence for purposes of impeachment. Such impeachment is fundamentally unfair because *Miranda* warnings inform a defendant that his silence will not be used against him. (426 U.S. 610, 618, 49 L. Ed. 2d 91, 422, 96 S. Ct. 2240, 2245.) *Doyle* involved two defendants who made no post-arrest statements about their involvement in the crime. The *Doyle* rule does not apply to cross-examination that inquires into prior inconsistent statements. *Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182.

■■ In the present case, defendant voluntarily made a statement after receiving *Miranda* warnings. He stated that he did not know what had caused complainant to become upset. His testimony at trial that complainant had become upset because he refused to give her money was inconsistent with his post-arrest statement. It was proper, therefore, for the prosecutor to question defendant concerning the prior inconsistent statement and to remark on the inconsistency during closing argument. In so doing, the State did not violate defendant's due process rights.

Second, defendant argues that he was unduly prejudiced by the State's introduction of evidence regarding defendant's offer of $1,000 to complainant to drop charges against him. The State maintains that such evidence was relevant to defendant's consciousness of guilt and therefore

admissible. The trial testimony given by complainant, defendant, and Sam Johnson provides us with only a skeletal outline of the facts relating to this issue. They are as follows.

Approximately two weeks after the alleged rape, Johnson and defendant went over to complainant's apartment at 1 a.m. Defendant waited in the lobby of the apartment building while Johnson went to speak with complainant in her apartment. Complainant dressed and went with the two to a currency exchange. Defendant had had some papers prepared by an attorney. An agreement was reached whereunder complainant would drop charges against defendant in exchange for $1,000. Defendant was unable to come up with the $1,000 at the currency exchange. Complainant telephoned her father from the exchange. Her father said "If [defendant doesn't] have the money then we press charges." Complainant neither signed the papers nor accepted any money.

Neither defendant nor the State has mentioned a fact which we consider crucial to the disposition of this issue. While defendant was being cross-examined, he testified that it was complainant who suggested the payment of $1,000. Although complainant testified that "he was going to give me his bond money," she did not contradict defendant's testimony that she contrived the scheme. In fact, at one point, she stated that the idea was her father's.

■■ The State correctly states the rule applicable to the admissibility of evidence of attempts to intimidate witnesses. Evidence of any attempt to intimidate a witness in a criminal case is properly attributable to a consciousness of guilt and therefore relevant. (See *People v. Gambony* (1948), 402 Ill. 74, 83 N.E.2d 321; *People v. Jones* (1980), 82 Ill. App. 3d 386, 402 N.E.2d 746.) Here, there is no evidence that defendant attempted to bribe complainant to drop charges or that he intimidated her in any way. Rather, the evidence shows an attempted "shake down" of defendant by complainant and/or her father. Defendant's actions do not tend to show a "consciousness of guilt" and the evidence, therefore, was not admissible on this basis.

■■ It is true that defendant's involvement in the scheme may constitute another offense. As a general rule, however, evidence that a defendant has committed an offense separate and distinct from the offense for which he is being tried is not admissible because of its prejudicial effect. (*People v. Turner* (1979), 78 Ill. App. 3d 82, 92, 396 N.E.2d 1139.) Such evidence may be admissible under certain circumstances. (See 78 Ill. App. 3d 82, 92.) None of these, however, is present in this case. We believe that defendant was severely prejudiced by the admission of this evidence and by certain prosecutorial references to his involvement in the scheme. During the State's opening statement, the prosecutor informed the jury

that "* * * there was a conversation in which the defendant, Elijah Frazier, offers [complainant] a thousand dollars not to testify against him." During closing argument, the prosecutor remarked "What about defendant's obstruction of justice? Should he be buying off witnesses on his rape case?" In its jury instructions, the trial court told the jury that opening and closing arguments were not to be considered as evidence. Nevertheless, we believe the admission of this evidence and references to it severely prejudiced defendant and that a reversal is required.

Third, defendant urges that he was denied a fair trial due to ineffective assistance of counsel. Defendant cites several instances where defense counsel should have proffered objections but failed to do so. For example, defense counsel failed to object during the State's closing and rebuttal arguments when: the prosecutor offered his personal belief that defendant was guilty; the prosecutor improperly commented about the reasonable doubt standard; the prosecutor told the jurors that they will have sisters, wives, and daughters who are sitting beside someone on a bus someday, and "you don't want them to be raped by that person"; the prosecutor made a personal attack on the integrity of defense counsel; and the prosecutor remarked that the defense witnesses were lying because they were bribed to testify for defendant. Additionally, defendant complains that defense counsel failed to object to improper questions during the State's examination of witnesses. He suggests that counsel's failure to object was attributable to his inexperience. In a post-trial hearing, it was learned that defense counsel had never tried a criminal case before or even assisted another practitioner in the trial of a criminal case.

■ A defendant has received ineffective assistance if defense counsel was actually incompetent and caused such substantial prejudice to defendant that the outcome of the case probably was changed. (*People v. Talley* (1981), 97 Ill. App. 3d 439, 443, 422 N.E.2d 1084.) Clearly, counsel's failure to object in several instances was due to his inexperience. We cannot say with any degree of certainty, however, that the outcome of this case was changed only because of the quality of assistance given by counsel. We already have determined that defendant is entitled to a new trial and believe that it is appropriate at this point to comment on several prosecutorial remarks made during the State's closing argument, to which defense counsel failed to object.

The prosecutorial remarks to which defendant claims his attorney should have objected are as follows:

> "* * * there is nothing magical about finding someone guilty beyond a reasonable doubt. It is done every day in courts all over the country."

> "People sitting next to each other on buses—If you have sisters, wives, daughters, you know they will at some point in their

life—They are going to be sitting next to somebody and you don't want them raped by that person."

"* * * Dr. Myers (expert witness) * * * is licensed to practice medicine—Not lie as [defense counsel]."

"Mary Kirk told Officer Herr one thing on October 8, 1979. Now she certainly testified to something different at this time. Why has she changed? Think about that. We know that [complainant] did not take any extra money. So there is a little extra money around here."

"Why did Sam and Mary [defense witnesses] lie? We know that the defendant is not above offering money to somebody not to testify against him. I think that leaves the inference that since [complainant] did not take anything, the next best thing is the witnesses."

■■ The prosecutor's comment on the reasonable doubt standard was improper. Such a comment had the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt is merely a *pro forma* or a minor detail. *People v. Martinez* (1979), 76 Ill. App. 3d 280, 285, 395 N.E.2d 86.

■■ Equally improper was the prosecutor's "sisters, wives, daughters" remark. A similar remark was made by the prosecutor in *People v. Crossno* (1981), 93 Ill. App. 3d 808, 417 N.E.2d 827. The court in *Crossno* held that the remark was improper but not grounds for reversal. (93 Ill. App. 3d 808, 824.) Similarly, we hold that this inflammatory appeal to the fears of the jury was improper. The remark should be avoided on the retrial of this matter.

■■ Defendant also objects to the implication that the defense attorney was "licensed to lie." Generally, such a comment is highly improper. Although improper, we have reviewed the record and find that in this case the comment was invited by defense counsel's misstatement of the evidence during closing argument.

Finally, defendant contends that the prosecutor improperly implied that the defense witnesses were lying because they were bribed by defendant. The prosecutor had no testimonial basis for the statement that the $1,000 earmarked but never given to complainant was instead given to the defense witnesses to lie at trial. This statement too should be avoided on retrial.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Judgment reversed; cause remanded.

CAMPBELL, P. J., and O'CONNOR, J., concur.