THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAFAEL RAMOS, Defendant-Appellant.

First District (4th Division)   No. 1—99—0991

Opinion filed December 14, 2000.

182

Erin Stone, of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, Alan J. Spellberg, and Donald R. Hallsten, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

Defendant, Rafael Ramos, was charged by information with possession of a stolen vehicle, possession of a vehicle with a removed vehicle identification number, concealing the identity of a vehicle, possession of a motor vehicle with a falsified vehicle identification number, and possession of a removed manufacturer's identification number plate. Prior to trial, the State nol-prossed the count for possession of a motor vehicle with a falsified vehicle identification number and proceeded to trial on the remaining four counts. Following a jury trial, defendant was found guilty of possession of a stolen vehicle, possession of a stolen vehicle with identifying number removed, concealing the identity of a vehicle and possession of a removed manufacturer's identification number plate. Thereafter, the trial court sentenced defendant to a term of 20 years' imprisonment. Defendant raises four issues on appeal: (1) whether the trial court properly exercised its discretion when it admitted certain statements into evidence; (2) whether defendant was denied a fair trial by the trial court's instruction to the jury regarding what weight should be given to the defendant's statements; (3) whether defendant was deprived of his right to a fair trial by the trial court's rulings to objections during closing arguments and by its responses to the jury's requests during deliberations; and (4)

whether the mandatory Class X sentencing provision violates the right of a defendant to due process and trial by jury because it subjects him to increased punishment without notice.

The following evidence was presented at trial. In 1992, Norma Lopez purchased a 1984 Buick Park Avenue, which was slightly damaged on the driver's side. Ms. Lopez kept the car for two years, did not repair the damage, and to her knowledge the car still had the vehicle identification number (VIN) tag when she sold it. Ms. Lopez identified a picture of the gray Buick in question as the car that she previously owned and identified a copy of the title with her signature on it.

In 1995, Andrew Stockhausen, Jr., bought a 1984 blue Buick Electra Park Avenue. On February 4, 1997, he let his son Joseph, an airline pilot, drive the car from their home in New Berlin, Wisconsin, to O'Hare Airport. Joseph parked the car in the Ramada Chicago O'Hare parking lot. When he returned to that parking lot on the morning of February 5, 1997, he discovered that the car was missing and called the Rosemont police.

Around 12 p.m. on February 11, 1997, Chicago police officers John Callaghan and Randall Hiller saw the blue Buick Electra and noticed it did not have a front license plate. Officer Hiller entered the Buick's rear license plate number into the police car's mobile computer and discovered that it was registered to a 1984 Subaru station wagon. Officers Hiller and Callaghan followed the Buick to a gas station in Chicago. Officer Michael Rivera and Officer Matranza also arrived on the scene to provide assistance.

Officer Callaghan approached the driver's side of the Buick and asked the driver, defendant, for his license, insurance and registration. Officers Callaghan and Hiller, who were standing nearby, noticed the interior of the car was blue but that the steering column was brown. When defendant could not produce any of the requested items, Officer Callaghan asked him and his companions to exit the car.

As Officer Callaghan was tending to defendant and the other occupants of the car, Officer Hiller continued his efforts to determine the identity of the blue Buick. He noticed that there was no legally required federal certificate label on the driver's door and that the dashboard's screws were loose. He wrote down the VIN number found on the dashboard and ran it through the mobile police computer. It came back as "no record on file." Officer Hiller then located and ran the VIN number found in the trunk of the blue Buick, which identified it as the car that was reported stolen in Rosemont. Defendant was then handcuffed and placed inside a police vehicle where Officer Callaghan read him his rights.

While inside the police car, defendant agreed to talk to the officers,

telling them he did nothing wrong and could take them to the person who had recently sold him the Buick. The two other occupants in defendant's car were transported to the police station. The four officers and defendant drove to Andreas Sotelo's apartment at 3086 North Elston; Officer Matranza drove the blue Buick. Officers Callaghan, Hiller and Rivera went up to Sotelo's apartment, while Officer Matranza remained with defendant.

Because Sotelo could not speak English very well, Officer Rivera spoke to him in Spanish and translated for the other officers. Sotelo told the officers that he sold defendant a gray Buick Park Avenue for $300 about one month earlier and denied selling any stolen cars. When he sold the car, the VIN number was on the dashboard, a picture of Our Lady of Guadalupe was on the passenger side of the car, and he gave defendant the title to the car. Sotelo identified the title he gave to defendant when he sold him the car and noted that Norma Lopez's signature was on it. Officer Callaghan asked Sotelo to accompany the officers outside. Outside, Sotelo told the officers that the blue Buick was not the car he sold to defendant, but he identified defendant as the man to whom he sold the car.

Officer Callaghan returned to the squad car and told defendant that the blue Buick was not the car which Sotelo had sold to him. Defendant then admitted that the blue Buick was not the car he purchased from Sotelo and that the car he did buy from Sotelo was sitting behind his apartment building at 3223 North California. Officer Callaghan then asked Officers Matranza and Rivera to take Sotelo over to 3223 North California.

Officers Callaghan and Hiller continued to interview defendant. Their respective memories at trial of what defendant said next differ slightly. Officer Callaghan testified that defendant told the officers that he removed the VIN number from the gray car, took it to a body shop around Grand and Division and paid $500 to get a stolen car and have the VIN number from the gray car put on the stolen car. Officer Hiller testified that defendant told the officers that he removed the VIN number from the gray car, took it to a body shop and paid $500 to have the steering column repaired and to have the VIN number put in the blue car. However, defense counsel attempted to impeach Officer Hiller by asking whether he remembered his testimony from a preliminary hearing whereby he was asked and answered the following: "Question: He paid 500 dollars for the vehicle? Answer: The blue car and to have the VIN tag put into the blue car, Mr. Stockhausen's vehicle."

Officer Callaghan asked defendant to take them to the garage around Grand and Division, and defendant refused. On cross-

examination, both officers admitted that defendant's refusal was not recorded in their police reports.

Officers Matranza and Rivera then accompanied Sotelo to 3223 North California, while Officers Callaghan and Hiller stayed with defendant at 3086 North Elston. At 3223 North California, the officers found a gray car parked in back that Sotelo identified as the car he sold to defendant. The gray car's VIN had been removed from the dashboard and the picture of Our Lady of Guadalupe was positioned on the driver's side of the dashboard, partially obscuring the missing VIN. Sotelo also stated that he previously lived at 3223 North California and that the gray car was in the same spot as it was when he sold it to defendant. When Officers Matranza and Rivera returned, they informed Officers Callaghan and Hiller that Sotelo identified the gray vehicle as the one he sold to defendant and that the VIN was missing from the dashboard.

Evidence technician Peter Newman testified that, after he examined the two Buicks, he determined that the VIN tag glued onto the dashboard of the blue car was actually the VIN tag belonging to the gray car. Newman also stated that the VIN in the trunk of the blue car matched the VIN on the title of the car belonging to Mr. Stockhausen.

Defendant presented the testimony of his neighbor, Mercedes Rivera, who testified that she loaned defendant $800 to buy a car. Ms. Rivera further testified that she subsequently saw defendant driving a large blue car and that defendant repaid her the money.

Defendant then presented the testimony of Jose Ortiz, who testified he knew defendant because he lives across the street from him and Ortiz is a godfather to defendant's son. Ortiz testified that he went with defendant in early February 1997 to purchase a car between Elston and California. He bought a blue, four-door Electra for $2,600 and was "pretty sure he gave [defendant] the title."

The defense then rested. In rebuttal, the State presented by stipulation that investigator Joseph Mackey was assigned to interview defendant's wife, Lucera Agosto, at 3223 North California, and that he went there with felony investigator Paul Munoz. Investigator Mackey asked Ms. Agosto if she had a copy of a title and, at that time, Ms. Agosto showed them the title to the gray Buick.

The jury found defendant guilty of possession of a stolen vehicle, possession of a stolen vehicle with identifying number removed, concealing the identity of a vehicle and possession of a removed manufacturer's identification number plate. Defendant's motion for a new trial was denied. During sentencing, it was established that defendant had 10 prior felony convictions and was qualified for manda-

tory Class X sentencing. The court sentenced him to 20 years' imprisonment.

Defendant first argues he was denied a fair trial where the jury heard inadmissible hearsay and a prior consistent statement which improperly bolstered the credibility of the State's key witness. Specifically, Officers Rivera, Callaghan and Hiller testified that when they talked to Sotelo on February 11, 1997, he told them that he did not sell a stolen car to defendant. Defendant contends that testimony was hearsay and double hearsay evidence, as well as inadmissible evidence of a prior consistent statement, and improperly bolstered the credibility of Sotelo. The State responds that defendant has waived this issue for review. The State admits that Sotelo's testimony that he told the police that he sold defendant a gray car was improperly admitted, but argues that such error was harmless.

At trial, Sotelo testified through an interpreter. He admitted that he did not have a green card or permanent residency, but maintained he was not living in the United States illegally. Sotelo testified he told the police that, a month earlier, he sold defendant a gray car for $300 and that he had given him title to the car. He also said that, when he sold the car to defendant, the VIN tag was on the dashboard and that he had left a picture of Our Lady of Guadeloupe in the car. When defense counsel on cross-examination asked Sotelo: "Did [the police] in fact ask you if you sold a stolen car to Raphael [sic] Ramos?," Sotelo answered, "Yes." Defense counsel continued by asking Sotelo: "And you said you—what did you say?" to which Sotelo responded, "Yes." On redirect examination, Sotelo testified that the gray car he sold to defendant was not stolen and that he did not sell him a blue car.

Over defense counsel's objection, Officer Rivera testified that Sotelo told him that a month earlier he sold a gray Buick Electra to a man for $300 and that the car had not been stolen. Officers Callaghan and Hiller also testified that Sotelo told them, through Officer Rivera's translation, that he recently sold a gray Buick which had not been stolen.

■ To preserve an issue for review, a defendant must both contemporaneously object at trial and include the specific alleged error in a written posttrial motion. Failure to raise an issue in a written posttrial motion constitutes a waiver of the issue and it cannot be considered on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124 (1988). While defense counsel objected when Officer Rivera was asked what Sotelo told him and when the State inquired as to the color of the car Sotelo told police he sold to defendant, counsel did not object when Officers Callaghan and Hiller testified as to what

Sotelo said. In addition, defendant did not include this issue in his posttrial motion.

■ Defendant argues that his claim should be considered under the plain error doctrine. However, the plain error rule is a limited exception to the waiver doctrine that will preserve an issue for appellate review where an appellate court finds that the error is of such magnitude that the defendant was denied a fair trial or where the evidence is closely balanced. *People v. Beasley*, 307 Ill. App. 3d 200, 208, 717 N.E.2d 420, 426 (1999).

■ Generally, a prior consistent statement is inadmissible to bolster a witness's credibility. *People v. Ciavirelli*, 262 Ill. App. 3d 966, 979, 635 N.E.2d 610 (1994). Admission of the prior consistent statement, even if improper, did not implicate a substantial right (*People v. Daniels*, 287 Ill. App. 3d 477, 485, 677 N.E.2d 1385 (1997)), nor was the evidence closely balanced. Therefore, we decline to address this issue.

Defendant contends that, if this court fails to consider the admission of Sotelo's prior consistent statement under the plain error doctrine, we should still examine the issue because defense counsel's failure to object to the hearsay and prior consistent statement and his failure to raise this issue in a posttrial motion constituted ineffective assistance of counsel. However, failure to include a claim of improperly admitted prior consistent statement testimony in a posttrial motion is not the mark of ineffective counsel. *People v. Henderson*, 142 Ill. 2d 258, 312, 568 N.E.2d 1234 (1990). In addition, in *People v. Coleman*, 158 Ill. 2d 319, 349-50, 633 N.E.2d 654 (1994), our supreme court has stated "that on a claim of ineffective assistance of counsel for failing to properly preserve issues for review, defendant's rights are protected by Supreme Court Rule 615(a) [(134 Ill. 2d R. 615(a))], which allows a court to review unreserved claims of plain error that could reasonably have affected the verdict." We decline to find ineffective assistance of counsel.

■ Defendant argues next that he did not receive a fair trial where the trial court gave the jury an instruction that omitted a phrase. Officers Callaghan and Hiller testified that defendant told them that Sotelo sold him the blue car. Defendant also admitted to the officers that he changed the VIN plate from the gray car and paid $500 to have it installed in another car. At the State's request, the trial court submitted to the jury the following instruction:

> "You have before you evidence that the defendant made statements relating to the offenses charged in the information. It is for you to determine what weight should be given to the statements. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made."

The pattern instruction reads as follows:

"You have before you evidence that [(the) (a)] defendant made [a] statement[s] relating to the offense[s] charged in the [(indictment) (information) (complaint)]. It is for you to determine [whether the defendant made the statement[s], and, if so,] what weight should be given to the statement[s]. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (3d ed. 1992).

The State responds that defendant has waived this issue for review since he did not object at trial and did not raise this issue in his motion for a new trial. *Enoch*, 122 Ill. 2d at 186. Defendant neither objected at trial to the jury instructions nor raised this issue in a motion for new trial, and thus, we find the issue waived.

Even if we were to consider the issue, we would not find error. "[T]he failure to include the bracketed language [does] not warrant reversal where defendant presented no evidence that defendant denied making the statement[s]. To allow otherwise would confuse the jury by making it decide an issue improperly before it." *People v. Garner*, 248 Ill. App. 3d 985, 992, 618 N.E.2d 753 (1993).

In the present case, defendant did not testify, nor did either of his witnesses testify or imply, that he did not make statements to the police. Therefore, since defendant presented no evidence that he did not make the statements, the instruction was properly given and the fairness of the trial was not undermined.

■ Defendant's third argument is that he did not receive a fair trial where the trial judge's responses to objections during closing arguments and his responses to the jury's requests during deliberations showed a bias against the defense. The State maintains that defendant has waived this issue for review and that, if such error did occur, it was harmless.

Defendant objected at trial during the State's closing argument but did not object to any of the trial court's responses to the questions of the jury nor did he raise them in his motion for a new trial. Generally, the failure to object constitutes waiver. *Enoch*, 122 Ill. 2d at 186-87. However, bias in a judge is one of the few trial errors that may not be deemed harmless. *People v. Jackson*, 250 Ill. App. 3d 192, 202, 620 N.E.2d 1239 (1993). Therefore, the waiver rule is less rigidly applied when the conduct of a judge is the basis for the appeal. *Jackson*, 250 Ill. App. 3d at 202. We reject the State's urging that we hold that defendant has waived this issue and shall review it.

■ Defendant argues that, twice during the State's argument, the trial court "merely overruled his objections" but showed bias toward

defendant during defense counsel's closing argument by instructing the jury to disregard any misstatements of the evidence.

During the State's closing argument, the following occurred:

"[Assistant State's Attorney]: The car had been stolen. You can infer from the evidence that has been presented. You heard evidence about how columns are peeled. The steering column was peeled. Because it was peeled it was replaced.

[Defense counsel]: Objection. There's no testimony to that effect.

THE COURT: Overruled.

[Assistant State's Attorney]: Because it had been peeled, it had been replaced because of the work in getting this car back into running condition. The dash had been tampered with because of the work on the column. It had a blue column. The interior of this blue car is blue. That steering column is brown because that brown column replaced the original blue column that had been peeled when the car was stolen. The original ignition had been ripped apart, probably started with a screwdriver.

[Defense counsel]: Objection to that.

[Assistant State's Attorney]: Not the key.

THE COURT: Overruled.

[Assistant State's Attorney]: And because of that damage the column was replaced, new keys provided, new locks installed, new locks installed in the ignition, new lock installed in the door. You remember Mr. Stockhausen said his ignition key didn't work. Of course it didn't work because you have a new column and you have a new ignition."

Since the prosecutor's argument is based upon reasonable inferences drawn from the evidence adduced at trial, we find no error in the trial court's overruling of defense counsel's objections. Officer Hiller testified he observed that the steering column of the car defendant was driving was of a different color than the rest of the interior of the car. He also testified that when a steering column is of a different color than the rest of the interior, that means the steering column has been changed and that part of the steering column is peeled away to reveal the starting mechanism so that the car can be started with a screwdriver. In addition to this testimony, Mr. Stockhausen testified that, when he recovered the car, the original ignition key would not work and that a new ignition key was needed. Inasmuch as the prosecutor drew reasonable inferences from this testimony, we do not find that the court abused its discretion in overruling defense counsel's objections.

The two instances of bias of which defendant complains occurred during his closing argument. The first instance of bias occurred during the following exchange:

"[Defense counsel]: I said what did you say? I told them I didn't know what they were talking about. Then I asked him later on did the police ask you if you sold a stolen car to Raphael Ramos, and he said yes. I asked him what did you say? He said yes. He told the police that he sold a stolen car to Raphael Ramos.

[Assistant State's Attorney]: Objection. Your Honor, it's not the words from the transcript.

THE COURT: Well, the jury will rely on its own recollection of the evidence, and as I said to begin with any misstatement made by counsel during argument it should be disregarded, and the arguments of the lawyers are not evidence and it should not be considered by the jurors as evidence. Go ahead, counsel. Proceed.

[Defense Counsel]: Then I recross examined Mr. Sotelo. That he told you that the gray car was in the same lot a month later as it was in when he sold it to the defendant a month earlier. *** He never sold the gray car to [defendant]. *** He thought Sotelo would be man enough to tell the police I sold him the blue car, which he did because from my notes he testified on the stand that's the car, and he told police he sold him a stolen car."

The second instance of which defendant complains is as follows:

"[Defense counsel]: All we know that's what Callaghan is saying. Callaghan also tells you that Ramos supposedly paid Three Hundred Dollars for the gray car. That's nowhere in the police reports. You would think that a significant fact.

[Assistant State's Attorney]: Objection.

THE COURT: There's an objection.

[Assistant State's Attorney]: Your Honor, there's no evidence before the jury of that.

[Defense counsel]: There is evidence of that because Hiller testified to that it's not in the police reports.

[Assistant State's Attorney]: That was not the testimony, your Honor.

THE COURT: Again the jury will rely on their memory of the evidence; and if counsel misstates the fact the jury should disregard any misstatements that counsel makes.

[Defense counsel]: I tried to ask that question of Officer Callaghan. The State objected. Then his Honor sustained the objection. Then I asked Hiller the same question, whether Three Hundred Dollars was in there.

[Assistant State's Attorney]: We would again object. Counsel is specifically stating—he's talking about evidence that's excluded.

THE COURT: Sustained."

The State objected to defense counsel's argument, and the court instructed the jury that it should disregard any misstatements made by counsel and rely upon its recollection of the evidence. In neither of

these instances do we see bias exhibited by the trial court. Rather, the trial court reiterated the preliminary instruction which is given to the jury in preparation for closing arguments.

Defendant further argues that the court's responses to the jury's requests for transcripts of evidence, copies of police reports and the posing of two questions revealed its bias against the defense. The State responds that this issue is also waived because defendant failed to object at trial and failed to raise it in his posttrial motion. *Enoch*, 122 Ill. 2d at 186. However, when the conduct of the trial judge is at issue, application of the waiver rule is less rigid. *People v. Rowjee*, 308 Ill. App. 3d 179, 185, 719 N.E.2d 255 (1999).

The decision whether to grant or deny a jury's request for transcripts of testimony rests within the sound discretion of the trial court, and unless there is an abuse of that discretion, the trial court's determination will not be disturbed on review. *People v. Kliner*, 185 Ill. 2d 81, 163, 705 N.E.2d 850 (1998). Where documents have not been admitted into evidence, the trial judge is without discretion to provide them to the jury during deliberations. *People v. Williams*, 173 Ill. 2d 48, 87, 670 N.E.2d 638 (1996).

The jury first requested a copy of a police report and portions of the transcript referring to the police reports. The State informed the trial court that it would be "impossible to give the transcript for all the police testimony. It won't be done today anyway. I would suggest just continue your deliberations." The trial court agreed, defense counsel did not object. The court instructed the jury that "you have received all of the evidence and exhibits which were admitted into evidence in this case. Please continue with your deliberations." The police reports requested by the jury could not be provided to the jury because they were not in evidence.

The jury's second note requested the "court report of today's stipulation, that is Joint Exhibit Number One. Lopez title was retrieved from Mrs. Ramos quote Lucero quote or parentheses I should say Lucero is in parentheses." The State suggested that the court reporter read that testimony back to the jury, defendant did not object and the trial court agreed. We fail to find bias in this instance were the jury requested and received a read back of the transcript of a joint stipulation.

The jury also sent a note asking what it meant when the police check a VIN number and it comes back as "no record," and whether the defense attorney asked any of the police if the defendant accompanied the police up to Sotelo's apartment. The trial judge proposed that he instruct the jury to "[p]lease continue to deliberate" and sign it Judge Fox. The court also asked both parties for objections

or suggestions. Defense counsel stated that he had no objection and did not offer any suggestions.

The trial court's decision to answer or refrain from answering a question from the jury will not be disturbed absent an abuse of discretion. *People v. Kinney*, 294 Ill. App. 3d 903, 907, 691 N.E.2d 867 (1998). "A trial court may exercise its discretion and properly decline to answer a jury's inquiries *** when the jury's inquiry involves a question of fact ***." *People v. Childs*, 159 Ill. 2d 217, 228, 636 N.E.2d 534 (1994). We decline to find that the court abused its discretion.

■ Defendant's final argument is that the mandatory Class X offender sentencing provision under section 5—5—3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(8) (West Supp. 1997)) is unconstitutional because it requires a trial court to impose a sentence within the range for Class X offenses whenever a 21-year-old or older defendant has been twice convicted of a Class 1 or Class 2 felony or greater class felony, provided the convictions were sequential and not simultaneous. Defendant contends that under the United States Supreme Court case of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), such a procedure is improper because the statute does not require that the prior convictions be pled in the charging instrument or proven at trial. The State first responds that defendant has waived this issue since he never previously challenged the imposition of a Class X sentence or otherwise complained that the charging instrument was deficient. The State further argues that, should we choose to reach the merits of defendant's argument, the *Apprendi* decision does not apply to this case.

Illinois law is clear that a defendant who wishes to challenge his sentence or any irregularities in the sentencing hearing must first file a timely postsentencing motion in the trial court or the issue will be deemed waived. *People v. Reed*, 177 Ill. 2d 389, 686 N.E.2d 584 (1997); 730 ILCS 5/5—8—1(c) (West Supp. 1997). A failure to challenge a charging instrument prior to the conclusion of the trial will result in waiver of the issue unless the defendant can prove that he was prejudiced by the deficiency. *People v. Thingvold*, 145 Ill. 2d 441, 448, 584 N.E.2d 89 (1991).

Defendant has not alleged that he has been prejudiced but, rather, that the Class X sentences imposed under section 5—5—3(c)(8) are void and, thus, can be attacked at any time. Defendant cites to *People v. Arna*, 168 Ill. 2d 107, 658 N.E.2d 445 (1995), as authority. However, whether a judgment is void or voidable presents a question of jurisdiction. *People v. Davis*, 156 Ill. 2d 149, 155, 619 N.E.2d 750 (1993). Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time. *Davis*,

156 Ill. 2d at 155. By contrast, a voidable judgment is one entered erroneously by a court having jurisdiction and is not subject to collateral attack. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174, 692 N.E.2d 281 (1998).

In this case, unlike *Arna*, the trial court properly sentenced defendant according to the law as it then existed. If defendant's Class X sentences were unconstitutional, the sentencing would still have been within the trial court's jurisdiction. Thus, it would have been a voidable order, which is not subject to collateral attack.

In addition, *Apprendi* clearly exempts recidivist statutes. *Apprendi* requires that any fact which increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. Defendant was sentenced as a Class X offender because he had 10 prior felony convictions. Since *Apprendi* does not apply to the Class X offender sentencing provision found in section 5—5—3(c)(8), we affirm defendant's sentence.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and HALL, JJ., concur.