FIFTH DIVISION

No. 1-06-1483

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| NICHOLAS MEEKS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Evelyn B. Clay, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant Nicholas Meeks was convicted of armed robbery and aggravated unlawful restraint and sentenced to concurrent, respective prison terms of 12 years and 3 years. On appeal, defendant contends that the prosecutor misstated the law and diminished the State's burden of proof during closing argument. Additionally, defendant contends that the trial court erred in allowing evidence that defendant's photograph was contained in a police computer database. Defendant does not challenge the sufficiency of the State's proof of his guilt, accordingly, only a brief recitation of the trial evidence is necessary here; additional evidence will be summarized as it becomes relevant to the discussion of specific issues. For the following reasons, we affirm.

BACKGROUND

During defendant's pretrial motion to suppress identification and at his trial, he was

identified by John Maras as the individual brandishing a gun while demanding Maras hand over his wallet at approximately 2 a.m. on December 17, 2004. Maras testified that after handing over his wallet, defendant fled with an accomplice. Maras contacted police and provided a description of the man who pointed the gun at him as "black, 5'8" or 5'9", stocky, in his 20's, with a round face, and lazy eye." This description and the victim's statement that the gunman weighed approximately 165 pounds with a medium build were memorialized in a police report prepared by Chicago police officer Ronald Mariani.

On December 19 or 20, 2004, Detective Thomas Kampenga received a similar description from Maras of the gunman, with the addition that he had a "stocky" build. Kampenga testified that he spoke with his supervisor, Sergeant Brad Redrick, who provided the last name of defendant as someone who fit the description and lived in the area where the robbery occurred. Kampenga testified that he obtained defendant's full name, address and photograph after entering his last name in the police computer system. Maras subsequently identified defendant from a photographic array and lineup as the gunman, which resulted in defendant being charged with the aforementioned offenses. During defendant's trial Kampenga acknowledged preparing reports after defendant's arrest indicating his height as 6 feet and weight as 230 pounds.

At defendant's trial, Officer Mark Sedevic testified that he and his partner took defendant into custody after he voluntarily came to the police station and that he listed defendant's height as 6 feet 1 inch and weight as 250 pounds in supplemental police reports he and his partner prepared. Defendant presented an alibi defense through the testimony of his grandmother,

1-06-1483

Menola Meeks, who stated that defendant lived with her, that on December 17, 2004, defendant went to bed at 1:30 a.m, and that she saw him sleeping in bed at approximately 3 a.m.

During closing argument, the prosecutor commented on the State's burden to prove defendant guilty beyond a reasonable doubt, stating "You think it's something special created for him? The same burden in every case in this courtroom. It's the same burden in every case in every courtroom in this building." The prosecutor also stated:

> "Now there was a lot of talk about what was in the police report.
> What did it say? What is in your report? You know, ladies and
> gentleman, you know how police reports are. They are so not
> important. You are not going to get them back there. You are not
> even."

At this point defense counsel objected, and the trial court reminded the jurors that they heard the evidence, that argument was not evidence, and they should disregard argument that does not comport with the evidence. The prosecutor then stated again:

> "[Y]ou are not going to get those police reports back with you
> when you deliberate. You don't get to see them. That's how not
> important they are. The only thing you are to consider, one of the
> instructions the Honorable Judge Clay will give you states the
> evidence you should consider consists only of the testimony of the
> witnesses and the exhibits received. All you can consider is what
> you heard and the exhibits you get in the back. That's it. Not

3

1-06-1483

police reports."

Defendant failed to object to these subsequent comments.

The jury found defendant guilty of armed robbery and aggravated unlawful restraint and the trial court sentenced him as described above.

On appeal, defendant first contends that the prosecutor made statements in closing argument that improperly misstated the law and diminished the State's burden of proof.

CLOSING ARGUMENT

The regulation of the substance and style of closing argument lies within the trial court's discretion, and thus the court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion. People v. Caffey, 205 Ill. 2d 52, 128 (2001). Defendant faces a substantial burden to achieve reversal of his conviction based upon improper remarks during closing argument. People v. Williams, 332 Ill. App. 3d 254, 266 (2002). A prosecutor is given great latitude in making closing arguments, and the trial court's determination of the propriety of the argument will stand absent a clear abuse of discretion. People v. Cisewski, 118 Ill. 2d 163 (1987). While a prosecutor may not make arguments or assumptions that have no basis in evidence, improper comments or remarks are not reversible error unless they are a material factor in the conviction or cause substantial prejudice to the accused. People v. Tipton, 207 Ill. App. 3d 688, 699-700 (1990). Where there are allegations of prosecutorial misconduct, arguments of both the prosecutor and defense counsel must be reviewed in their entirety, and allegations of improper comment must be placed in their proper context. Tipton, 207 Ill. App. 3d at 701. Accordingly, the questioned comments must be considered in the

4

context of the closing argument as a whole. A reviewing court will find reversible error based upon improper closing argument only if a defendant can identify remarks of the prosecutor that are both improper and so substantial that a reasonable jury could have reached a different verdict if the improper comments had not been made and thus were a material factor in defendant's conviction. People v. Wheeler, 226 Ill. 2d 92, 123 (2007); People v. Evans, 209 Ill. 2d 194, 225 (2004). We therefore examine the alleged improper comments in context of the entire record.

In the instant case, we begin by analyzing the prosecutor's comments during closing argument, specifically about certain police reports that contained the initial description of the gunman provided by the victim, John Maras. Initially, we find that the prosecutor's comments that the jury would not view the reports were not an improper misstatement of the law because (1) the reports were not admitted in evidence, and (2) were inadmissible as a matter of law. People v. Ramos, 318 Ill. App. 3d 181, 191 (2000); People v. Shinohara, 375 Ill. App. 3d 85, 113 (2007).

Nonetheless, defendant contends that when the prosecutor stated in closing argument that the reports were not important, she implicitly told the jury to disregard the height and weight description of the gunman that Maras gave to police shortly after the robbery, descriptions that defendant contends did not match his height and weight. In essence, defendant takes issue with the manner in which the prosecutor addressed defendant's impeachment evidence in her closing argument, namely, evidence of Maras' prior statements made to police regarding the height and weight of the gunman that defendant contends cast doubt on his subsequent identification as the gunman.

These alleged prior inconsistent statements given to police were contained in police reports and were elicited by defense counsel during her examination of the officers who authored the reports. We find that when defense counsel elicited this evidence, she was attempting to discredit or impeach Maras' identification of defendant as the gunman. Thus, defendant's efforts to impeach the State's primary witness were a proper subject for the State to address in closing argument. The State did so by addressing the facts and circumstances of the robbery and why those facts and circumstances caused Maras to initially provide a description of the gunman's height and weight that varied somewhat from the defendant's actual height and weight. People v. Cox, 377 Ill. App. 3d 690, 707 (2007).

Defendant contends that the prosecutor's "not important" comment about police reports diminished the importance of his impeachment evidence. However, the record is clear that regardless of the prosecutor's police report comments, defendant did introduce evidence of Maras' initial height and weight description of the gunman through live testimony given by police witnesses. Therefore, this evidence of the victim's initial description of the gunman was before the jury.

Accordingly, the jury was not precluded from considering the evidentiary value of the victim's initial description by the prosecutor's comments. It was the jury's role to decide the importance and weight to give the initial description, to reconcile it with the conflicting evidence of defendant's height and weight, and draw inferences therein. People v. Tenney, 205 Ill. 2d 411, 428 (2002). It was also the province of the jury to pass on Maras' credibility and reconcile his

initial description with the multiple identifications he made of defendant as the gunman. <u>Tenney</u>, 205 Ill. 2d at 428; <u>People v. Cooper</u>, 194 Ill. 2d 419, 430 (2000). We find that the prosecutor's isolated comments about police reports were not an improper misstatement of the law and furthermore did not prevent the jury from considering the weight and evidentiary value of Maras' initial description of the gunman.

In addition, the questioned comments must be considered in the context of the closing argument as a whole. <u>Evans</u>, 209 Ill. 2d at 225; <u>People v. Nieves</u>, 193 Ill. 2d 513, 533 (2000). Here, even if the prosecutor's comments were improper, the trial court took proper steps to minimize any prejudice to defendant. The record is clear that the prosecutor's two comments were brief, and the defendant immediately objected. The trial court responded by specifically instructing the jurors that attorney arguments were not evidence and they were to consider only witness testimony and exhibits in evidence in rendering their verdict. In addition, the trial court both orally and in writing instructed the jury that the believability of a witness may be challenged by prior inconsistent statements. It is well settled that if a timely objection is made at trial, the court can, by sustaining the objection or instructing the jury to disregard the answer or remark, usually correct the error. <u>People v. Carlson</u>, 79 Ill. 2d 564, 577 (1980). We believe that the trial court's instructions accomplished this purpose and served to mitigate any of the potential prejudice of which defendant now complains. <u>Wheeler</u>, 226 Ill. 2d at 128; <u>People v. Desantiago</u>, 365 Ill. App. 3d 855, 865 (2006).

Moreover, in light of the evidence of defendant's guilt, we cannot say that the verdict would have been different absent the prosecutor's comments about the police reports.

Specifically, Maras identified defendant as the gunman during a photographic array and again in a police lineup and on three separate occasions during court proceedings. Uncontradicted evidence established that the area where the robbery occurred had adequate lighting and that the robbery occurred over a 10- to 20-minute period, providing Maras ample opportunity to view and remember the gunman. It is well settled that a single witness's identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. People v. Slim, 127 Ill. 2d 302, 306 (1989).

We also find that People v. Andrews, 101 Ill. App. 3d 808 (1981), which defendant cites to support his position, is not analogous. Andrews involved the trial court's refusal to admit police reports as a past recollection recorded exception to the hearsay rule, a method for admitting evidence never sought by the defendant in the instant case, and wholly unrelated to the closing argument issue before us. Andrews, 101 Ill. App. 3d at 812. Hence, the totality of the record establishes that the prosecutor's comments were not improper, or if they were, did not jeopardize the integrity of the judicial process and deny defendant a fair trial. People v. Cisewski, 118 Ill. 2d 163, 175 (1987) (comments by State were not of such a magnitude as to have altered the trier of fact's determination of defendant's guilt).

Defendant next contends that he was denied a fair trial by a statement of the prosecutor in closing argument that diminished the State's burden to prove him guilty beyond a reasonable doubt. As specifically noted above, the prosecutor referred to her burden of proof as one she welcomed, and a standard of proof universal to prosecutors throughout the criminal court building. Defendant did not object to the prosecutor's additional comments and therefore has

8

waived objection to the prosecutor's subsequent comments by failing to object at trial. People v. Woods, 214 Ill. 2d 455, 470 (2005); People v. Enoch, 122 Ill. 2d 176, 186 (1988). Defendant concedes that he failed to object to the comments at trial, but argues that we should review the alleged prosecutorial misconduct under the plain error rule.

We may consider plain errors or defects that affect substantial rights, even though the errors were not brought to the trial court's attention. 134 Ill. 2d R. 615(a); People v. Herron, 215 Ill. 2d 167, 187 (2005). However, before we consider whether there was plain error, we must first determine whether there was any error at all. People v. Piatkowski, 225 Ill. 2d 551, 565 (2007). We agree that comments by a prosecutor during closing argument that suggest that the State's burden of proof is merely a pro forma or a minor detail are improper. People v. Frazier, 107 Ill. App. 3d 1096, 1102 (1982). However, both this court, and our supreme court have addressed comments virtually identical to those of the prosecutor in the instant case and found such comments permissable. People v. Kidd, 175 Ill. 2d 1, 40 (1996); People v. Gacho, 122 Ill. 2d 221, 255 (1988); People v. Ward, 371 Ill. App. 3d 382, 423 (2007); see People v. Averett, No.1-05-3495, slip op. at 10 (March 31, 2008). We therefore find no error, let alone plain error, regarding the prosecutor's comments about the State's burden of proof.

ADMISSIBILITY OF DEFENDANT'S POLICE COMPUTER DATABASE PHOTOGRAPH

Finally, defendant's argument that the trial court erred when it allowed in evidence of the fact that defendant's photograph was in a police database also must fail. Defendant failed to include this contention in his posttrial motion and therefore has waived objection to the admission of this evidence under general rules of forfeiture. Enoch, 122 Ill. 2d at 186.

Defendant concedes that he failed to raise this issue in his posttrial motion, but argues that we should again review the alleged prosecutorial misconduct under the plain error rule. 134 Ill. 2d R. 615(a); Herron, 215 Ill. 2d at 187. Again, before we consider defendant's argument for plain error, we must first determine whether there was any error at all. Piatkowski, 225 Ill. 2d at 565.

Defendant contends that testimony regarding the fact that his photograph was in a police database was improper evidence of other crimes. It is axiomatic that such evidence is generally not admissible to show a defendant's guilt because the jury may convict the defendant only because it feels he is a bad person deserving of punishment. People v. Thingvold, 145 Ill. 2d 441, 452 (1991). Other crimes evidence is admissible, where relevant, to prove modus operandi, intent, identity, motive or absence of mistake. People v. Illgen, 145 Ill. 2d 353, 364 (1991). A trial court's ruling on the admissibility of other crimes evidence will not be reversed absent an abuse of discretion. Thingvold, 145 Ill. 2d at 452.

This court has not addressed this precise issue, but has considered the admission of testimony that a defendant's fingerprints were on file with government agencies, and also his DNA was contained in a DNA database of convicted criminals. The cases involving fingerprints upheld the admission of testimony that a defendant's fingerprints were obtained from a state agency. People v. Jackson, 304 Ill. App. 3d 883, 894 (1999); People v. Hopkins, 229 Ill. App. 3d 665, 676 (1992); People v. Prewitt, 160 Ill. App. 3d 942, 949 (1987). However, this court found it improper to admit evidence that a defendant's DNA profile was stored in a state DNA database. People v. Jackson, 372 Ill. App. 3d 112, 123 (2007), *appeal allowed*, 225 Ill. 2d 653 (2007).

We reasoned in the fingerprint cases that evidence of a defendant's fingerprints in the government's possession would not imply that a defendant had a criminal background, specifically because it is common knowledge that crime victims, government employees and security personnel also have their fingerprints on file with the government. Jackson, 304 Ill. App. 3d at 894; Hopkins, 229 Ill. App. 3d at 676; Prewitt, 160 Ill. App. 3d at 949. We distinguished fingerprints from a defendant's DNA profile, based on the common perception that DNA databases are strictly used to store only DNA profiles of convicted criminals. Jackson, 372 Ill. App. 3d at 123.

The State contends that the fingerprint cases apply here, because both fingerprints and photographs are taken and stored in government databases for reasons other than criminal activity, such as photographs taken in connection with the issuance of a driver's license or state-issued identification cards. Such databases also contain pictures of victims, witnesses or informants. Defendant argues that the testimony about his picture in the police database was analogous to evidence that a DNA profile was stored in a DNA database and found improper in Jackson.

We agree with the State, specifically because, as we noted in Jackson, there is a qualitative difference between a police database containing fingerprints or photographs and a DNA database. Jackson, 372 Ill. App. 3d at 123. Photographs are similar to fingerprints, which are commonly known to be stored in government databases for reasons unrelated to criminal activity, and unlike the collection and storage of DNA in a DNA database, which is commonly known to store only DNA profiles of convicted criminals. Jackson, 372 Ill. App. 3d at 123.

11

1-06-1483

Because we find no error, there can be no plain error, which only applies if an error occurred.

People v. Patterson, 217 Ill. 2d 407, 445 (2005).

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

FITZGERALD SMITH, P.J., and GALLAGHER, J., concur.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee

v.

NICHOLAS MEEKS,

Defendant-Appellant

---

No. 1-06-1483

Appellate Court of Illinois
First District, FIFTH DIVISION

April 25, 2008

---

Justice Margaret O'Mara Frossard authored the opinion of the court:

Presiding Justice Fitzgerald Smith and Justice Gallagher concur.

---

Appeal from the Circuit Court of Cook County.
The Hon. Evelyn B. Clay, Judge Presiding.

---

**COUNSEL FOR APPELLANT**
Patricia Unsinn of the Office of the State Appellate Defender, Chicago, IL 60601
OF COUNSEL: Emily R. Atwood


**COUNSEL FOR APPELLEE**
Richard A. Devine, Cook County State's Attorney, Chicago, IL 60602
OF COUNSEL: James E. Fitzgerald and Eve Reilly

1-06-1483